**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **LEGACY HEALTHCARE SERVICES, INC.,** ) | **CASE NO. 1:03CV00515** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **JUDGE ANN ALDRICH** |
| ) | |
| **PROVIDENT FOUNDATION, INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | **MEMORANDUM AND ORDER** |

On March 21, 2003, plaintiff Legacy Healthcare Services, Inc. ("Legacy"), filed a complaint in the United States District Court for the Northern District of Ohio, Eastern Division, against defendants Provident Foundation, Inc., and The Long Term Care Foundation, doing business as Citrus Health Care and Rehab Center ("LTCF"), alleging a breach of contract. (Doc. No. 1). The subsequent filings revealed that Provident is the sole member of Provident Group-Citrus Health & Rehabilitation Center LLC ("Provident Group"). (Doc. No. 11). Legacy's first amended complaint named Provident Group as the sole defendant. (Doc. No. 18). On August 1, 2003, Provident Group filed a counterclaim against Legacy alleging a breach of contract. (Doc. No. 19).

On September 9, 2006, Provident Group filed a motion for summary judgment dismissing Legacy's first amended complaint, as well as a motion for summary judgment on Provident Group's counterclaim. (Doc. No. 67, 68). On October 19, 2006, Legacy filed briefs in opposition to both motions. (Doc. No. 76, 77). On November 1, 2006, Provident Group filed replies to both motions. (Doc. No. 82, 84).

All issues have been fully briefed and are ripe for adjudication. For the following reasons, Provident Group's motions for summary judgment are denied.

## I. FACTUAL BACKGROUND

Legacy is a corporation that provides rehabilitation programs to health care facilities in the United States. Its principal place of business is in North Carolina and it is licensed to do business in Ohio. (Doc. No. 1 at ¶1). Provident Group is a Delaware LLC authorized to do business in Florida. Its sole member is Provident, a Georgia non-profit corporation. (Doc. No. 11). LTCF was a long term care facility doing business in Florida.

On March 1, 2000, Legacy and LTCF entered into a contract ("the Contract") for therapy services. When LTCF went into bankruptcy, the Bankruptcy Trustee assigned the Contract to Provident Group, who accepted the assignment.

On April 1, 2002, Legacy provided therapy services to Provident Group at the Florida Citrus facility. Due to concern over the quality of the services provided as well as bill documentation, on October 4, 2002, Provident Group exercised its right to terminate the contract as of November 30, 2002.

In the months before termination of the contract, Legacy submitted invoices to Provident group for services rendered under the Contract. Specifically, $77,186.72 for September 2002, $86,504.27 for October 2002, and $68,561.10 for November 2002. Provident Group submitted these invoices to Medicare's fiscal intermediary for reimbursement. Under the terms of the Contract, Legacy was entitled to 75% of the Medicare reimbursement. While the fiscal intermediary paid Provident Group in full, Provident Group did not pay Legacy, citing concerns that Legacy had not

complied with the terms of the Contract.

In November 2002, Legacy's Senior Vice President notified Provident Group that it had improperly billed them for services. In December 2002, Provident Group hired an independent consultant, Pershing, Yoakley & Associates ("PYA"), who reviewed the medical charges and found billing and documentation errors in 84% of the charts reviewed. In February 2003, the Medicare fiscal intermediary, Mutual of Omaha, notified Provident Group that it was conducting its own Probe Review of the Citrus facility. The Probe Review found a documentation error rate of 86% with respect to the claims reviewed. In her supplemental affidavit, Legacy's President, Sandra Hoskins ("Hoskins"), testified that based on her examination of the PYA report, it is inaccurate and inapposite. Specifically, she examined the PYA report and states that it does not demonstrate an understanding of the particulars of the Medicare billing requirements for long term care and skilled therapy services. Additionally, she states that the Legacy patient files she examined comport with the documentation requirements. Lastly, she notes that she is able to competently testify, in contradiction to the PYA reports, that Legacy's billing practices and procedures were in compliance with the Medicare billing requirements.

Provident Group's counterclaim claims that Legacy's alleged actions exposed Provident Group to damages and penalties for improper billings made to Medicare.

Provident Group argues that Legacy cannot make its breach of contract claim without expert testimony contradicting the PYA report. Given that Legacy has not listed any expert witnesses in its Fed. R. Civ. P. 26(a)(2) disclosures, Provident Group maintains, therefore, that summary judgment is appropriate with respect to Legacy's complaint and Provident Group's counterclaim. In the alternative, if conflicting expert testimony is not required, Provident Group argues that

Hoskins and Sandra Cowden are not qualified to testify.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party moving for summary judgment has the initial burden to either (1) present affirmative evidence negating an element of the non-movant's claim or (2) demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once that burden is met, the non-movant must set forth sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

All reasonable factual inferences must be drawn in favor of the non-movant. *Humenny v. Genex Corp.*, 390 F.3d 901, 904 (6th Cir. 2004) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). However, "the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Indeed, "[a] mere scintilla of evidence is insufficient; rather there must be evidence on which the jury could reasonably find for the non-movant." *Humenny*, 390 F.3d at 904 (internal quotation omitted).

**A.   Legacy Need Not Provide Expert Testimony**

Provident Group argues that Legacy has failed to establish an essential element of its case–that it complied with its documentation obligations under the Contract.  Under Ohio law, to establish a breach of contract claim, a plaintiff must prove: "(1)the existence of a binding contract or agreement; (2) that he performed his contractual obligations; (3) that the other party failed to fulfill its contractual obligations without legal excuse; and (4) he suffered damages as a result."  *Hicks v. Bryan Med. Group, Inc.*, 287 F.Supp.2d 795, 803 (N.D. Ohio 2003) (citation omitted).  The Contract states in relevant part, "LEGACY warrants that all billing data and forms submitted by LEGACY to the Treatment Facility for transmittal to third party payors shall be accurate and true and will comply in all material respects with all applicable third party payor rules and regulations."  (Doc. No. 1-2).

Provident Group's expert testimony posits that Legacy failed in that respect.  Given that Legacy provides no contradicting expert testimony, Provident Group maintains that summary judgment against Legacy's claim is appropriate.  The court disagrees.

There is no Sixth Circuit case that *requires* expert testimony for a Medicare billing dispute.  Indeed, absent a state or federal mandate requiring expert testimony to maintain a claim, the Federal Rules of Evidence are quite clear; Rule 702 states that if testimony from a qualified expert will assist the trier of fact the court "may" allow such testimony.  *See* Fed. R. Evid. 701; *see also Stromback v. New Line Cinema*, 384 F.3d 283, 295 (6th Cir. 2004) (stating "[w]hether expert testimony should be allowed in a particular case remains to the discretion of the trial court under Federal Rule of Evidence 702.").  Provident Group, however, cites to district courts in Maryland and the District of Columbia for the proposition that, "expert testimony is required

-5-

when the subject matter is so particularly related to some science or profession that it is beyond the ken of the average layman." *Adams v. NVR Homes, Inc.*, 142 F.Supp.2d 649, 654 (D.Md. 2001) (citation omitted); *Parker v. Grand Hyatt Hotel*, 124 F.Supp.2d 79, 89 (D.D.C. 2000) (citation omitted).

While these decisions do not bind the court, even under such a standard, the present issue does not warrant expert testimony. The crux of the conflict rests on whether Legacy's billing procedures were sufficiently compliant with the Medicare protocols in keeping with the Contract. While the billing documentation procedures will not likely read as clearly or fluidly as *The Great Gatsby*, the Medicare rules and regulations are not beyond the ken of the average layman.[1] Provident Group's expert testimony will likely assist the jury, just as Rule 702 envisioned. Legacy, however, need not provide countervailing expert testimony.

**ii). Hoskins and Cowden Are Qualified to Testify**

In the alternative, Provident Group argues that the testimony of Hoskins and Cowden lacks foundation. The court disagrees. Hoskins, the President of Legacy, has a B.S. in occupational therapy, and has twenty-eight years of educational, clinical and administrative experience. Similarly, Cowden is a retired Regional Vice President at Legacy, and has clinical and administrative experience in therapy services since the mid-1960s. Given their experiences in the field of healthcare administration, both Cowden and Hoskins can testify about the Medicare reimbursement requirements.

---

[1] Provident Group cites *U.S. v. Universal Rehab. Servs.,Inc.*, No. CRIM 94-147, 1996 WL 297575, at *8 (E.D. Pa. May 31, 1996) (*aff'd*, 205 F.3d 657 (3rd Cir. 2000)), for this proposition. It says no such thing. Rather, it says that such expert testimony would be "helpful." *Id.* The case never uses the word "necessary" to describe the use of experts for Medicare regulations.

-6-

The summary judgment standard requires giving the benefit of the doubt to the nonmoving party, in this case, Legacy. *Humenny*, 390 F.3d 901 at 904. Given Hoskins and Cowden's experience, they are competent to testify as to the procedures followed by Legacy, and whether they complied with the Medicare regulations and the Contract. Hoskins's testimony, based on personal examination of the PYA report and Probe Reviews, contradicts those findings.[2] A reasonable jury could hear Hoskins's testimony and find for Legacy. This conflict, therefore, establishes a genuine issue of material fact.

**B. Provident Group's Motion on its Counterclaim Fails for the Same Reasons**

Provident Group incorporates identical arguments in its motion for summary judgment on its counterclaim. For the aforementioned reasons, the court disagrees.

### III. CONCLUSION

For the foregoing reasons, Provident Group's motions for summary judgment are denied. A status call is set for February 23, 2007 at 10:00 A.M., and a trial date on March 12, 2007 at 9:00 A.M.

IT IS SO ORDERED.

                              */s/ Ann Aldrich*
                              ANN ALDRICH
                              UNITED STATES DISTRICT JUDGE

Dated: January 26, 2007

---

[2] Provident Group argues in its motion for summary judgment on its counterclaim that Hoskins's amended affidavit should be disregarded. The court disagrees. Her supplemental affidavit establishes that her analysis and conclusions are based on a personal examination of the PYA report. Therefore, Provident Group's argument that the court must disregard Hoskins's affidavit under Rule 408 of the Federal Rules of Evidence is inapposite.